**Donald R. GRATEHOUSE**

v.

**The UNITED STATES.**

No. 328–73.

United States Court of Claims.

March 19, 1975.

Ben Paul Noble, Washington, D. C., atty. of record, for plaintiff. Noble, Mann & Schoenfeld, Washington, D. C., of counsel.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before COWEN, Chief Judge, and SKELTON and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

BENNETT, Judge:

Plaintiff seeks back pay and reinstatement to his position by reason of an alleged procedural error on the part of the Civil Service Commission (CSC) in failing to consider and decide plaintiff's claim that his resignation from departmental employment was coerced. Defendant argues that the claim of duress is simply an afterthought of plaintiff's, that he did not even raise the issue before the effective date of his resignation, and that, therefore, the agency and the CSC did not consider it and violated no adverse action procedures, as alleged by plaintiff. Defendant asks that we dismiss the claim or remand it to the CSC for a hearing on the merits of the allegation of resignation induced by coercion.

We conclude upon a consideration of the briefs, including supplemental briefs requested by the court, and upon oral argument, for reasons hereafter stated, that plaintiff is not presently entitled to back pay or reinstatement. However, pursuant to Pub.L. 92–415, 86 Stat. 652 (1972), we remand to the CSC for a hearing on the merits of plaintiff's claim of coerced resignation.

Until his separation on September 4, 1971, plaintiff was a career Government employee (economist, GS–13, step 4) with the Department of Housing and Urban Development. On March 19, 1971, plaintiff's supervisor informed him in detail, by letter, that plaintiff's job performance for the past 3 years was unsatisfactory, that as a consequence an in-grade salary merit increase scheduled for June 3, 1971, was being "indefinitely withheld," and that plaintiff's work was "not of a caliber to merit continued employment." Following receipt of this letter, plaintiff met with the Deputy Under Secretary, who, after hearing plaintiff's response, advised him that he might consider seeking other employment. Subsequent efforts to secure other employment were, however, unsuccessful.

A very real concern for plaintiff during this period was that the denial of the in-grade salary increase would be a blot on his personnel record and reduce opportunities for future employment. As a result of this concern, plaintiff agreed to submit his resignation—dated May 20, 1971, though not effective until September 4 of that year—in return for his

receiving the in-grade increase. This arrangement appears to have been at plaintiff's suggestion.

On September 2, 1971, 2 days before the effective date of his resignation, plaintiff submitted a letter dated September 1 to his supervisor. The letter requested the immediate return of his resignation, and charged for the first time that the resignation had been the product of unspecified "illicit actions" and "bad faith" on defendant's part. At a meeting of plaintiff and HUD personnel on the same day, his request for withdrawal of resignation was denied. However, plaintiff was offered a 60-day temporary appointment in order to give him more time to find another position. Plaintiff rejected the offer and he was separated on September 4, the effective date of his resignation.

Plaintiff timely appealed his separation to the CSC on September 15, 1971, alleging, for the first time explicitly, that his resignation was involuntary within the meaning of chapter 752 of the Federal Personnel Manual.[1] Specifically, he alleged deception, intimidation, time pressure, and duress. In reply, the agency argued that the resignation was voluntary and that it had a valid reason for refusing plaintiff's requested withdrawal of the resignation. The chief of the CSC Appeals Examining Office, noting that pursuant to FPM chapter 715, subchapter 2–3, the agency was required to "have a valid reason for denying the withdrawal," ruled on November 4, 1971, that HUD had not stated a valid reason or communicated one to plaintiff, that his separation was therefore an adverse action, subject to 5 C.F.R. Part 752–B (1972), and that the regulations pertaining to such action had not been followed. It was recommended that plaintiff be restored to his position retroactive to September 4. The Appeals Examining Office stated that it was ruling only that there had been a procedural deficiency

and that the decision "does not constitute any ruling on the merits or sufficiency of the reasons the Department may have for removing Mr. Gratehouse from the service." We note also that the decision made no reference to plaintiff's claim that his resignation was involuntary from its inception.

HUD promptly appealed the foregoing decision to the CSC's Board of Appeals and Review (BAR). HUD's letter of appeal asserted that the agency had valid reasons for refusing to permit the withdrawal of plaintiff's resignation and reiterated that the May 20, 1971 resignation was entirely voluntary. HUD alleged, among the grounds for its action, that plaintiff's position had been eliminated and that he had been replaced by another person with a GS–9 rating. Returning plaintiff's resignation would thus have created administrative disruption, in HUD's opinion. Such disruption and reassignment was sufficient to support HUD's actions pursuant to CSC regulations and chapter 715, subchapter 2–3, of the Federal Personnel Manual (June 21, 1971):

> * * * When the agency does not permit an employee to withdraw his resignation before its effective date, the agency must have a valid reason for denying the withdrawal. Among the reasons that would be valid are a showing that it would cause administrative disruption or that the job has been committed to someone else. A desire to avoid taking adverse action would not be a valid reason for denying the withdrawal. Whatever the reason, it must be explained to the employee. * * *.

Plaintiff contested HUD's assertions.

In its decision of May 5, 1972, the Board of Appeals and Review reversed the Appeals Examining Office, finding that HUD's stated reasons for refusal to permit withdrawal of the resignation

---

1. FPM Supp. 752–1, § S1–2a(1) (1972), states, in pertinent part:

"* * * [A] normally voluntary action—i. e., a resignation, optional retirement, or reduction in rank or pay at the employee's request—is an adverse action if it is obtained by duress, time pressure, intimidation, or deception. * * *."

were within required guidelines and valid. Plaintiff's resignation, the board stated, "properly became effective on September 4, 1971." Thus, the board did not directly address the allegation in plaintiff's appeal that his resignation was involuntary due to intimidation and deception. This, plaintiff now says, was a procedural violation of adverse action regulations contained in 5 C.F.R. part 752 (1972), entitling him to back pay and reinstatement regardless of the merits of his claim of coercion and deception. He says that he was entitled to a hearing by the CSC on his charge. Plaintiff raises his right to a hearing for the first time in his pending motion. He did not complain to the CSC about its failure to accord him any procedural rights nor that it had failed to speak to his charge of involuntary resignation. Plaintiff's petition to the court was filed on August 23, 1973. It was amended on April 4, 1974.[2] Plaintiff's motion for summary judgment was filed on July 3, 1974.

■ It is now hornbook law in our jurisdiction that an involuntary resignation constitutes an adverse action by the agency. FPM Supp. 752–1, § S1–2a(1); McCormack v. United States, 204 Ct.Cl. 371 (1974); Cosby v. United States, 417 F.2d 1345, 189 Ct.Cl. 528 (1969). Where there is a nonfrivolous allegation by a Government employee that his resignation was involuntary, he is entitled, in the usual case, upon timely appeal to CSC, to a hearing before that body. 5 C.F.R. Parts 752, 772 (1972); Goodman v. United States, 358 F.2d 532 (D.C.Cir. 1966); Dabney v. Freeman, 358 F.2d 533 (D.C.Cir. 1965); McCormack v. United

States, *supra* ; Cunningham v. United States, 423 F.2d 1379, 191 Ct.Cl. 471 (1970). Where it is found that an adverse personnel action has been carried out in substantial violation of procedural regulation, it is a void action and the employee is entitled to recover any pay of which he has been illegally deprived. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Leone v. United States, 204 Ct.Cl. 334 (1974); Jones v. United States, 203 Ct.Cl. 544 (1974); Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965). Exceptions are made to the rule where the procedural error is deemed harmless.[3]

Against the background of these general rules we have the facts of this case illustrating abundant procedural blunders by both sides, sufficient to mislead both. As to plaintiff, he never argued to his department that his resignation was being coerced. He only requested, over 3 months after he submitted his resignation, and 2 days before it was to become effective, that he be permitted to withdraw it. Until plaintiff appealed to the CSC there was no reason to believe that plaintiff viewed his resignation as involuntary. His memorandum of appeal to the CSC spoke of coercion for the first time and referred to FPM chapter 752. At that point the CSC Appeals Examining Office focused on the requirement of FPM chapter 715 that an agency must have a valid reason for refusing to permit withdrawal of a resignation. In reviewing the action of the Appeals Examining Office the BAR apparently never

**2.** Plaintiff's first amended petition charges that he was separated on the basis of agency action alleged to be arbitrary and capricious and in violation of agency law and regulation. Plaintiff's motion for summary judgment is limited, however, to the rights of plaintiff by reason of failure of CSC to accord him his procedural rights to a hearing on the merits of the allegation that his resignation was void and illegal because obtained by duress. This opinion is limited to this issue raised by the motion.

**3.** Haynes v. United States, 190 Ct.Cl. 9, 418 F.2d 1380 (1969); McCallin v. United States,

180 Ct.Cl. 220 (1967); Creamer v. United States, 174 Ct.Cl. 408, cert. denied, 385 U.S. 819, 87 S.Ct. 42, 17 L.Ed.2d 57 (1966); Greenway v. United States, 163 Ct.Cl. 72, 80 (1963), 175 Ct.Cl. 350, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966). A prejudicial procedural error is not rendered harmless, however, because the merits of the dispute appear to be clearly against the employee. Bell v. United States, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965); Garrott v. United States, 340 F.2d 615, 169 Ct.Cl. 186 (1965).

realized that plaintiff had made a claim of involuntary resignation, for it focused entirely on the issue of whether or not the decision of the Appeals Examining Office was sustainable. This oversight is not difficult to understand in the context of events leading to the resignation and the demand for its withdrawal, for until *after* plaintiff left the Government payroll there was no issue about an involuntary resignation.

When the BAR decision came down, it should have been instantly clear to plaintiff that the BAR had failed to consider what plaintiff now says is his primary claim—coercion. Yet, he made no attempt to bring the oversight to the BAR's attention. 5 C.F.R. § 772.308 (1972) provides that a party may request reconsideration of a decision where it is believed that a procedural or substantive error has been made. Plaintiff did not exhaust his opportunity to gain such reconsideration at the administrative level. If an employee sincerely feels that there has been an oversight of this kind on his appeal, yet he does not say anything about it or use the regulations designed to correct such error, questions arise as to the fairness of his failure to do so. It is unjust to keep silent and many months or even years later in a lawsuit make the point while back pay has been allowed to accumulate. We do not impute improper motives to plaintiff here but, of course, the result of what he did is the same as if he had acted deliberately to capitalize on a technical oversight to maximize his claimed damages. On the other hand, the board's decision stated that "there is no further right of administrative appeal." Plaintiff might fairly have assumed from this that he had no opportunity for reconsideration. As we have said, both sides contributed to this confusion and must share the responsibility for failure of the CSC to render a decision on the coercion issue. But, the comedy of errors does not end here.

At some time before plaintiff's motion for summary judgment was filed on July 3, 1974, counsel for defendant in a telephone conversation offered plaintiff a hearing before the CSC. Defendant's attorney emphasized in oral argument that the offer of a hearing was made as a matter of "grace," not as an admission of any prior procedural error. He also stated that the hearing was to have retroactive effect, *i. e.*, a decision against plaintiff on the duress question would preclude any recovery of back pay by plaintiff. The plaintiff refused the offer.

■■■ The consequences of a refusal to accept an agency's offer to remedy a possible, though disputed, procedural error will depend on the timing and nature of the offer. We have many times held that an agency has the inherent power to reconsider and change a decision if it does so within a reasonable period of time. Recently, in fact, we applied this rule specifically to the CSC. Bookman v. United States, 453 F.2d 1263, 197 Ct.Cl. 108 (1972). In *Bookman* we noted at 111 (453 F.2d at 1265) that "reconsideration is often the sole means of correcting errors of procedure or substance." We stated further:

> * * * this court will sustain the reconsidered decision of an agency, as long as the administrative action is conducted within a short and reasonable time period. * * *. [453 F.2d at 1265, 197 Ct.Cl. at 112–13.]

What is a short and reasonable time period will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years. A correction of an error within a reasonable time period will have retroactive effect, or, in other words, will preclude any cause of action based on the original error.

Where reasonable time for reconsideration has expired, there is no longer an opportunity to correct the procedural error retroactively. Vitarelli v. Seaton, *supra*; Manzi v. United States, 198 Ct.Cl. 489 (1972); Hanifan v. United States, *supra*. This is true because, generally speaking, separation of an employee in violation of procedural regulations is illegal and void, except where it is harmless

error. The employee in effect was never separated, and never stopped drawing his pay. Service v. Dulles, *supra*; Jones v. United States, *supra*. In sum, where a prejudicial procedural error has been committed, and a reasonable time for reconsideration has run, the purpose of a correction of that error can only be to determine the merits of the dispute *prospectively*.

■■ In the instant case, defendant's offer of a CSC hearing 2 years after a hearing could have been held was far too late to qualify as reconsideration. Thus, plaintiff was entirely justified in refusing the offer, once it was ascertained that any decision arising out of that hearing was to have retroactive effect. Had he accepted such an offer, plaintiff would have waived any right he might have had under different circumstances to recover back pay as a result of the alleged faulty procedure.[4]

We come down now to the two central issues of the case—did defendant violate its regulations by not affording plaintiff a prompt hearing on his claim of forced resignation made after the effective date of that resignation? And, can we, as plaintiff insists, find for plaintiff on the merits of his claim that his resignation was forced?

■ As to the first point, it is plaintiff's position that regardless of when he charged coercion, defendant committed a breach of regulations since it did not afford him a hearing on his charge. He says that such a violation entitles him to back pay regardless of the merits of his claim of coercion. We note that plaintiff's appeal to CSC was within 15 days after the effective date of his resignation and that he therein asserted facts as to coercion which, standing alone, entitled him to adverse action procedures,

including a hearing by CSC. As we have said, it is defendant's failure to accord plaintiff such a hearing that gives rise to the back pay claim. It is clear to the court from the supplemental briefs and exhibits that there was no requirement by regulation that plaintiff must first raise the issue of coerced resignation before his department before going to CSC about it, assuming timely appeal to CSC, as here. It is equally clear from regulations set forth in the HUD Handbook, § 771.3, Adverse Actions and Appeals, which plaintiff admits he had access to and knew about, that plaintiff could have claimed before his department that he was the victim of an adverse action and that he would have obtained a hearing on the charge. But, he elected to go to CSC.

■ Plaintiff's claim suffers from the disability that his separation was not the result of a violation of procedural regulations by his agency. Any such violation came only after he was no longer a Government employee and on a charge of such violation raised at that time. This plainly served to confuse defendant as to what plaintiff's real claim was, and plaintiff cannot escape responsibility for contributing to that confusion and for his failure even to call to the attention of the BAR his charge, first made in court, that it had committed what he believed to be procedural error. The standard rules heretofore referred to thus do not fairly fit the facts of this case. Additionally, plaintiff gives us no reason whatever for his failure to raise the coercion issue before he went off the payroll. If he believed he was coerced, he had several months to claim it before his resignation became effective. There is no reason to assume that had plaintiff thus exhausted his administrative reme-

4. On the other hand, we do not believe that the Government is helpless to prevent the continuing cumulation of back pay during litigation where the Government is charged with violation of procedural regulations. If defendant offers, in writing, to correct the procedural shortcomings alleged by an employee, which will have prospective effect only, then a refusal of that offer by a plaintiff would, we think, al of that offer by a plaintiff would, we think, limit his period of recovery to the date of that offer. Whether such an offer is or is not accepted, defendant may continue its defense in this court of the procedures employed in the initial decision. If a stay of proceedings in this court were required while the corrected procedures went forward, it would be freely given in appropriate circumstances.

dy in the regular way he would not have been accorded all procedural rights. Plaintiff knew what his rights were all along, unlike in McCormack v. United States, *supra.*

In these circumstances, therefore, where plaintiff bears a heavy responsibility for his failure to receive a timely hearing on a charge he did not raise, and does not explain why he did not raise it while in defendant's employment, and where no regulations are proven to have been violated prior to his leaving that employment, we think it is harmless error if there is any error, and that the rule reiterated most recently in Hart v. United States, 204 Ct.Cl. 925 (1974), cert. denied, 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 643 (1974), should apply:

> * * * In Cohen v. United States, 369 F.2d 976, 177 Ct.Cl. 599 (1966), cert. denied, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967), this court held that a plaintiff is required to show "demonstrable prejudice" to support a charge of procedural error. We see no such prejudice in this case. * * *. In fact, any financial prejudice involved could be remedied, if a claim could be made out, by administrative action or under the Back Pay Act, 5 U.S.C. § 5596 (1970) * * *.

We would only add that any other rule would put a premium on form rather than substance and permit a plaintiff to recover for technical rule infractions without demonstrated prejudice flowing therefrom. We decline to recognize such a result as in the interests of proper administration of justice. Fortunately, under our procedures and jurisdiction there is a way to get directly to the merits of a serious charge such as plaintiff raises here. We turn, therefore, to plaintiff's claim which the CSC did not face—was plaintiff's resignation induced by coercion of defendant?

■ Plaintiff's claim for back pay and reinstatement to his position, from which he claimed he was neither legally removed nor legally resigned, cannot be determined without a hearing on the merits of his allegations that the resig-

nation was improperly induced by defendant. This is an issue of disputed fact that cannot be resolved on these pending motions. Paroczay v. Hodges, 111 U.S.App.D.C. 362, 297 F.2d 439 (1961). Plaintiff claims that he was tricked and deceived, pressured and intimidated. Defendant says that the claim is in bad faith because defendant at the departmental level addressed and repudiated all charges made by plaintiff concerning refusal of his attempt to withdraw the resignation and that these charges were dismissed by the CSC as well. Defendant says that the claim of a coerced resignation is pure afterthought since it was not raised before HUD although there was ample opportunity to do so, that it was not raised even with the CSC until about 4 months after the resignation was submitted to HUD by plaintiff, and that the issue was not raised at all until after plaintiff's resignation had become effective. Defendant would have us conclude from all this that plaintiff has created a lawsuit by his own failures on the job and that these failures led to plaintiff's offer to resign in order to get the step pay increase. But, we do not know and can conclude nothing from the motion papers about the quality of plaintiff's work. Defendant also says that the claim is an afterthought because plaintiff could not find another job although he conducted a long search made possible by his selecting a delayed date for his resignation to go into effect. Defendant offered plaintiff still additional time to job-hunt but it was refused. Defendant charges that plaintiff actually sought an extension of the resignation date shortly before he raised the coercion issue. Defendant concludes that this case is just an effort by plaintiff to reap a windfall for the consequences of his failure to perform on the job and that, in any event, he cannot be reinstated to a position that was abolished.

■ These contentions, of course, all require proof. As in McCormack v. United States, *supra,* Goodman v. United States, *supra,* and Dabney v. United States, *supra,* it is proper that this issue

of whether the resignation was in fact voluntary be decided in the first instance by the Civil Service Commission to which it is remanded for hearing and decision. If plaintiff wishes to pursue the matter further he has the burden of proving that his resignation was not voluntary. Leone v. United States, *supra*. The criteria for deciding the issue are set forth fully in the CSC regulations, Federal Personnel Manual, and in decided cases. Pitt v. United States, 420 F.2d 1028, 190 Ct.Cl. 506 (1970); Dabney v. Freeman, *supra*; Fruhauf Southwest Garment Co. v. United States, 126 Ct.Cl. 51, 62, 111 F.Supp. 945, 951 (1953).

If defendant made a mistake for which plaintiff must be compensated, it will not be because under the facts we have on the motions defendant can fairly be charged with violating regulations. It is not necessary to find such violation now for plaintiff to recover, however, if he can establish the truth of his claim of coercion. If through defendant's oversight in not addressing one issue in plaintiff's appeal to CSC, delay has been occasioned as to a hearing which might have been afforded sooner, it is not plaintiff who will lose thereby. If back pay is due because plaintiff sustains his claim, he will have established the prejudice he has suffered and will have to be made whole for it by defendant, back to September 4, 1971, with appropriate offsets required by law. Ainsworth v. United States, 399 F.2d 176, 185 Ct.Cl. 110 (1968); Back Pay Act of 1966, 5 U.S.C. § 5596 (1970), 80 Stat. 94.

Pursuant to our authority by rule and the remand statute, 28 U.S.C. § 1491 as amended by Pub.L. 92–415, 86 Stat. 652 (1972), the case is remanded to the Civil Service Commission for a hearing on plaintiff's charge of resignation induced by defendant's coercion. Further proceedings in court are suspended for a period of 6 months from this date. Plaintiff's counsel is designated to advise the court by letter to the trial judge of the status of the remand proceedings pursuant to Rule 149(f). Attention of counsel and the Commission is also di-

rected to Rule 150. The motion for summary judgment and cross-motion for summary judgment are allowed and denied consistent with this opinion.