Bert C. SHAPOSKA

v.

The UNITED STATES.

No. 220–75.

United States Court of Claims.

Oct. 19, 1977.

Sheldon I. Cohen, Arlington, Va., attorney of record, for plaintiff.

Gerald L. Schrader, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DURFEE, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

This civilian pay case involves the dismissal of a physically handicapped person from his job as a GS–7 Editor with the National Archives and Records Service of the General Services Administration (GSA). Plaintiff seeks to overturn the decision of the Civil Service Commission (CSC) which upheld his termination. Plaintiff's argument is premised on three principal grounds: *first*, plaintiff's procedural rights under 5 U.S.C. § 7501 (1970) [1] were violated since he was in competitive status at the time of his termination, and he was afforded only those termination procedures due a person serving a probationary period; *second*, plaintiff was terminated as a result of discrimination against him due to his physical handicap; *third*, the catalyst for plaintiff's termination was a letter he wrote to Congressman Frank M. Clark concerning alleged injustices against plaintiff at his job. For the reasons set forth below, we grant plaintiff's cross-motion for summary judgment.

■ Plaintiff, a deaf-mute, was hired by the Archives on May 8, 1972. Plaintiff had been employed by the Government in career-conditional status within three years prior to his hiring by the Archives, although such employment had ended some time before he was offered the position with the Archives. Prior to his hiring by the Archives, plaintiff was on an appropriate Civil Service appointment register.

1. 5 U.S.C. § 7501 (1970) provides, in relevant part:

(a) An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service.

(b) An individual in the competitive service whose removal or suspension without pay is sought is entitled to reasons in writing and to—

(1) notice of the action sought and of any charges preferred against him;
(2) a copy of the charges;
(3) a reasonable time for filing a written answer to the charges, with affidavits; and
(4) a written decision on the answer at the earliest practicable date.

\* \* \* \* \* \*

The CSC Form 50 (Notification of Personnel Action) recorded plaintiff's hiring by the Archives as a temporary appointment not to exceed one year, and cited 5 C.F.R. § 316.402(b)(1) (1972)[2] as the authority for such an appointment. Defendant concedes that such an appointment was an error because it did not fall under any of the categories for temporary limited appointment listed in the Federal Personnel Manual (FPM) ch. 316, subch. 4–1(a).[3] Defendant maintains that it had intended to make plaintiff's hiring a temporary limited appointment not to exceed 700 hours. This latter-type appointment can be utilized by defendant to hire severely handicapped persons under the authority of FPM ch. 316, subch. 4–7, which provides, in relevant part:

> 4–7. Temporary Limited Appointments Outside Registers
>
> \*     \*     \*     \*     \*     \*
>
> c. Appointment for 700 hours or less.
>
> \*     \*     \*     \*     \*     \*

**2.** 5 C.F.R. § 316.402 (1972) (as amended March 1, 1972) provides, in relevant part:
Authorities for temporary appointments.
(a) *General rule.* An agency may make and extend a temporary limited appointment only with specific authorization from the Commission, except under the conditions published by the Commission in the Federal Personnel Manual or as provided in paragraph (b) of this section.
(b) *Noncompetitive temporary limited appointments.*
An agency may give a temporary limited appointment, without regard to the existence of an appropriate register, to:
(1) A person with eligibility for reinstatement;
(2) A person eligible for career or career-conditional appointment under § 315.601 of this chapter;
(3) A person who meets the requirements for indefinite appointment under § 316.501;
(4) A former temporary employee of the agency who was originally appointed from a register, subject to the conditions published by the Commission in the Federal Personnel Manual; and
(5) A person eligible for career or career-conditional appointment under § 315.605 of this chapter.
(6) A person eligible for career or career-conditional appointment under § 315.606 of this chapter.

    \*     \*     \*     \*     \*     \*

5 C.F.R. § 316.401 (1972) further provides:

(4) *Handicapped applicants.* To facilitate the employment of persons with severe physical handicaps and those who have been restored to mental health after treatment for mental or emotional disorder, agencies are encouraged to use this authority to provide initial or trial temporary employment for these applicants. Temporary limited appointment for not to exceed 700 hours may be made even though the position to be filled is a continuing one.

The purpose of this special appointment procedure for the severely handicapped is explained in FPM ch. 306, subch. 4–2:

> 4–2. Appointment [of the physically handicapped]
>
> \*     \*     \*     \*     \*     \*
>
> c. Using trial appointment procedure. Many severely handicapped people need a trial appointment because they are unable to obtain competitive appointment even with examination modification or referral service, or both, through the Co-

Purpose and duration. The Commission may authorize an agency to make a temporary limited appointment to meet an administrative need for temporary employment, such as to fill a temporary position or a continuing position for a temporary period. An agency may make a temporary limited appointment only for a definite period of 1 year or less.

**3.** FPM ch. 316, subch. 4–1(a) provides:
Purpose of temporary limited employment. Under conditions authorized by the Commission, temporary limited employment is used to meet administrative needs such as filling temporary positions, or filling a continuing position for a temporary period. The following types of positions are filled by temporary limited appointments:
(1) Positions not expected to last more than one year;
(2) Seasonal positions (i. e., positions involving periodically recurring employment other than the career-type positions);
(3) Part-time and intermittent positions that are not clearly of a continuing nature; and
(4) Continuing positions, when temporarily vacated for periods of less than one year, or when filled by persons 70 years or older.
All citations to the FPM reflect the language in effect at the time of corresponding factual occurrences in this case. Minor revisions, of no significance for purposes of this case, have subsequently been made to certain sections cited.

ordinator program. One barrier to their employment may be inability to be selected competitively even though they have been trained and are qualified to perform the job tasks. Another barrier may be employer reluctance to hire them for fear they will not be able to perform on the job efficiently or safely, or fit in with and be accepted by the work force. These obstacles can often be overcome by use of the 700-hour temporary trial appointment authority (chapter 316, section 4–7c(4)).

\* \* \*

Defendant made no changes in its recording of plaintiff's employment status at the completion of the initial 700 hours of plaintiff's employment, which would have occurred on or about September 6, 1972. On October 18, 1972, plaintiff asked the agency personnel office if it would be possible to make arrangements for him to qualify for health insurance. Upon further inquiry into this matter and ascertainment of plaintiff's satisfactory job performance, defendant attempted to correct its original error of classifying plaintiff's hiring as a temporary limited appointment not to exceed one year. On November 26, 1972, defendant purported to convert by reinstatement plaintiff's appointment to one of career-conditional status under authority of 5 C.F.R. § 315.-401 (1972), which provides, in relevant part:

> Reinstatement.
>
> (a) *Agency authority.* An agency may reinstate a person who had a competitive status or was serving probation when he was separated.
>
> \* \* \* \* \* \*

The Appeals Examining Office of the CSC subsequently ruled that the conversion by reinstatement to career-conditional status should have an effective date of September 6, 1972, at the end of plaintiff's first 700 hours of employment.

Although plaintiff's work product was considered quite satisfactory throughout his employment with the Archives, some problems developed in the relationship between plaintiff and certain other employees of the Archives. Defendant contends that there were several incidents where plaintiff either exhibited displays of temper or wrote offensive notes to fellow employees. In light of these alleged difficulties, plaintiff was temporarily assigned in February 1973 to the National Audio-Visual Center, a branch of the Archives, in Suitland, Maryland.

After unsuccessfully attempting to be returned to his normal job assignment, plaintiff wrote to Congressman Clark regarding his job situation on May 24, 1973. The Congressman, in turn, wrote to GSA on June 7, 1973, inquiring into the circumstances of plaintiff's job assignments. GSA responded to the Congressman's inquiry by forwarding a report on July 10, 1973 concerning plaintiff's employment record. The report concluded by stating that plaintiff was to be terminated. By letter of July 18, 1973, plaintiff was notified of his separation, effective August 1, 1973.

Since defendant considered plaintiff to be in probationary status at the time of his termination, the notification of separation informed plaintiff that, besides this notice itself, his procedural rights were limited to an appeal to the CSC only on those grounds specified in 5 C.F.R. § 315.806 (1973).[4]

---

4. 5 C.F.R. § 315.806 (1973) provides, in relevant part:

    \* \* \* \* \* \*

  (b) *On discrimination.* (1) An employee may appeal under this subparagraph a termination which he alleges was based on discrimination because of race, color, religion, sex, or national origin. The Commission refers the issue of discrimination to the agency for investigation of that issue and a report thereon to the Commission.

  (2) An employee may appeal under this subparagraph a termination not required by statute which he alleges was based on partisan political reasons or marital status or a termination which he alleges resulted from improper discrimination because of physical handicap.

    \* \* \* \* \* \*

  5 C.F.R. § 315.804 (1973) provides:

  Termination of probationers for unsatisfactory performance or conduct. When an agency decides to terminate an employee serving a probationary or trial period because his work

These grounds include discrimination based on race, color, religion, sex, national origin, political reasons, marital status, or physical handicap. Defendant admits plaintiff was not afforded those rights to which a person in competitive status (*i. e.*, one who completed a one-year probationary period under a career-conditional appointment, as defined in 5 C.F.R. § 212.301 (1973)) would be entitled under 5 U.S.C. § 7501, specifically, notice of proposed adverse action and an opportunity to make a written reply.

Plaintiff subsequently exhausted his administrative remedies before the CSC. The CSC Appeals Examining Office held that plaintiff was still in his probationary period when terminated because the agency had the authority to appoint plaintiff to a temporary limited appointment not to exceed 700 hours at the time he was hired. The Appeals Examining Office viewed as a nonprejudicial error the erroneous recording of plaintiff's hiring as a temporary limited appointment not to exceed one year. Plaintiff's claims that his termination was a result of discrimination due to his physical handicap and that his dismissal was made in response to the fact that he wrote Congressman Clark were also denied. The CSC Appeals Review Board affirmed the decision of the Appeals Examining Office.

A person appointed to a career-conditional position must normally serve a one-year probationary period before competitive status is acquired. 5 C.F.R. §§ 212.301, 315.-302, and 315.802 (1973). Only persons in competitive status are eligible for the procedural safeguards of 5 U.S.C. § 7501, in light of 5 C.F.R. § 212.401 (1973). Persons serving a probationary period are entitled only to the notice provisions of 5 C.F.R. § 315.804 (1973) and appeals to the CSC based on certain acts of discrimination under 5 C.F.R. § 315.806 (1973), unless the reasons for dismissal are based on conditions arising before that individual's appointment. If we were to decide that plain-

tiff's May 8, 1972 appointment placed him in career-conditional status, thus commencing the one-year probationary period on that date, then plaintiff should have been afforded the procedural rights to which he was entitled by 5 U.S.C. § 7501 because the one-year probation would have expired before his termination on August 1, 1973.

The basis of defendant's argument that plaintiff was a probationary employee at the time of his termination, not entitled to the procedural rights of 5 U.S.C. § 7501, is that defendant intended to make plaintiff's hiring a temporary limited appointment not to exceed 700 hours and had the authority to do so, in light of plaintiff's severe handicap, under FPM ch. 316, subch. 4–7(c)(4). Plaintiff maintains that he had held career-conditional status in Government employment within three years prior to his hiring by the Archives, was on an appointment register, and should have been appointed as a career-conditional, rather than a temporary, employee.

We hold that plaintiff's hiring on May 8, 1972 placed him in career-conditional status as of that date. Plaintiff's one-year probationary period had expired before his termination on August 1, 1973, and he was thus in competitive status at that time. Consequently, plaintiff was entitled to the procedural safeguards of 5 U.S.C. § 7501, which were denied him.

There is no question that plaintiff could have been given a career-conditional appointment when hired by the Archives. Plaintiff was on an appropriate appointment register, and had been employed by the Government in career-conditional status within three years prior to his hiring. This eligibility for career-conditional status was implicitly acknowledged by defendant through the alleged "conversion by reinstatement" of plaintiff's status to career-conditional on November 26, 1972. Defendant utilized 5 C.F.R. § 315.401 (1972) for

performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective

date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

this action, a regulation authorizing reinstatement within three years following the date of separation for those who had held career-conditional status. There is nothing in either the regulations or the FPM that mandates that all severely handicapped persons must be hired through the special limited appointment procedure. Plaintiff's previous employment experience with the Government exemplifies this fact.

If we were to hold for defendant in this case, we would effectively be placing plaintiff in a less beneficial employment status, on the basis of his physical handicap, than the erroneous temporary limited appointment not to exceed one year classification in which he was ostensibly hired. Under the facts of this case, this is an unacceptable result. The temporary limited appointment not to exceed 700 hours is designed to aid the severely handicapped by actually giving them a chance to demonstrate, on a temporary basis, that they are capable of performing a job, where otherwise they might not receive such an opportunity. FPM ch. 306, subch. 4–2(c). The interpretation defendant seeks would discriminate against, rather than aid, the physically handicapped. Furthermore, our holding is consistent with the intent of Congress to avoid discrimination based on physical handicap in Government employment, as expressed in 5 U.S.C. § 7153 (1970), which provides:

> Physical handicap. The President may prescribe rules which shall prohibit, as nearly as conditions of good administration warrant, discrimination because of physical handicap in an Executive agency or in the competitive service with respect to a position the duties of which, in the opinion of the Civil Service Commission, can be performed efficiently by an individual with a physical handicap, except that the employment may not endanger the health or safety of the individual or others.

■ Where defendant is hiring a physically handicapped person, and chooses to restrict that appointment to a temporary limited appointment not to exceed 700 hours, it is incumbent upon the agency to make the nature of the appointment clear in the hiring process. Absent such specification, the presumption should be that the handicapped person is entitled to the same appointment status that a non-handicapped person would receive. Defendant should not be permitted to take a provision designed to aid the handicapped and turn it to plaintiff's detriment where the ground rules were not established at the time plaintiff was hired.

The denial of plaintiff's substantial procedural rights under 5 U.S.C. § 7501 renders the adverse action against him void, and thus entitles him to appropriate back pay. This policy has been expressed in a number of pay cases in this court, including *Gratehouse v. United States*, 512 F.2d 1104, 1108, 206 Ct.Cl. 288, 296 (1975), where the court stated:

> Where it is found that an adverse personnel action has been carried out in substantial violation of procedural regulation, it is a void action and the employee is entitled to recover any pay of which he has been illegally deprived.

*See also Hanifan v. United States*, 354 F.2d 358, 364, 173 Ct.Cl. 1053, 1062 (1965); *Garrott v. United States*, 340 F.2d 615, 622, 169 Ct.Cl. 186, 198 (1965). Since no genuine issue of material fact exists in regard to the procedural aspect of this case, disposition by summary judgment is appropriate under Rule 101(d).

Since our holding is based on the procedural issue, we need not address the questions of whether plaintiff was discharged either because of discrimination due to his physical handicap or as a result of his petitioning Congressman Clark in relation to his job. However, we would be remiss not to add that our holding seems particularly justified in light of the rather suspect nature of the charges against plaintiff. In transmitting the report concerning plaintiff's employment record upon which his termination was based to Congressman Clark on July 10, 1973, defendant admitted that it had "found his editorial work to be very satisfactory." The problem seemed to

be more of a communications difficulty with his fellow workers than anything else. In view of plaintiff's particular physical handicap, it is not surprising that certain communications problems would arise. The nature of the charges brought against plaintiff, the handicap involved, and the commitment of Congress as expressed in 5 U.S.C. § 7153 to avoid discrimination based on physical handicap in Government employment would place a heavy burden upon the agency to show that such a dismissal "will promote the efficiency of the service", in the language of 5 U.S.C. § 7501(a).

Defendant's motion for summary judgment is denied, and plaintiff's cross-motion for summary judgment is granted. Plaintiff is entitled to recover back pay and allowances as provided by law, less appropriate offsets, from the date of his dismissal on August 1, 1973. The case is remanded to the Trial Division for further proceedings under Rule 131(c) to determine the amount of recovery due plaintiff. The trial judge shall also recommend to the court whether or not reinstatement for plaintiff should be ordered, in light of the particular circumstances of the case.