## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JOHN C. PARKINSON,<br>          Appellant, | DOCKET NUMBER<br>SF-0752-13-0032-X-1 |
|       v. | |
| DEPARTMENT OF JUSTICE,<br>          Agency. | DATE: September 5, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Jesselyn Radack</u> and <u>Kathleen McClellan</u>, Washington, D.C., for the appellant.

<u>Celeste Wasielewski</u>, Esquire, and <u>Drew Ambrose</u>, Washington, D.C., for the agency.

<u>Deja C. Nave</u>, Esquire, San Francisco, California, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**ORDER TO SHOW CAUSE**

This petition for enforcement is before the Board to obtain compliance with the Board's October 10, 2018 final decision in the underlying case, which, after a remand from the U.S. Court of Appeals for the Federal Circuit, mitigated the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

appellant's removal to a 15-day suspension. *See Parkinson v. Department of Justice*, MSPB Docket No. SF-0752-13-0032-M-2, Initial Decision (Oct. 10, 2018). The appellant filed a petition for enforcement of that decision, which the administrative judge granted in part in a January 15, 2020 compliance initial decision. *Parkinson v. Department of Justice*, MSPB Docket No. SF-0752-13-0032-C-1, Compliance Initial Decision (Jan. 15, 2020). Both parties petitioned for review of the compliance initial decision. On May 20, 2024, the Board issued an order denying the petitions for review; affirming in part, modifying in part, and vacating in part the analysis in the compliance initial decision; and referring the petition for enforcement to the Board's Office of General Counsel for additional processing in furtherance of the Board issuing a final decision once the agency had demonstrated compliance with the obligations imposed by the October 10, 2018 Order, as interpreted through its May 20, 2024 Order. *Parkinson v. Department of Justice*, MSPB Docket No. SF-0752-13-0032-C-1, Order (May 20, 2024) (May 20, 2024 Order); *Parkinson v. Department of Justice*, MSPB Docket No. SF-0752-13-0032-C-1, Compliance Petition for Review File, Tab 8.

On June 26, 2024, the Board issued an Order and Summary of Telephone Conference summarizing the parties' June 17, 2024 conference with the Board's Office of General Counsel, and noting the status of issues outstanding from its May 20, 2024 Order. *Parkinson v. Department of Justice*, MSPB Docket No. SF-0752-13-0032-X-1, Compliance Referral File (CRF), Tab 9. On July 3, 2024, the Board issued an order clarifying and superseding the June 26, 2024 Order to the extent the second order contradicted the first. CRF, Tab 11. Specifically, as relevant to the instant Order, the two orders together noted the agency's obligation to pay the appellant back pay, with interest, and benefits, and less any interim earnings, for the time period July 14, 2016, through December 17, 2018; and to return the appellant to the status quo ante for the time period December 18-30, 2018. CRF, Tabs 9 and 11. Finally, the July 3, 2024 Order instructed the agency to file detailed evidence of compliance by August 20, 2024, and instructed

the appellant to file a response to the agency's submission by September 20, 2024. CRF, Tab 11 at 2.

On August 20, 2024, the agency indeed filed a response to the July 3, 2024 Order, but made no attempt to comply with the substance of the Board's instructions. Rather than submitting evidence that it paid the appellant as required for July 14, 2016, through December 17, 2018, and restored him to the status quo ante for December 18-30, 2018, the agency flatly refused to comply with the Board's Order on the basis that it believed the Board's findings in its May 20, 2024 Order were "erroneous as a matter of law and will have a substantial, adverse impact on the administration of the civil service and matters of national security." CRF, Tab 14 at 4. The agency provided no explanation or evidence for this extraordinary statement.

We note, first, that it is not obvious how routine payment of back pay could "have a substantial, adverse impact on the administration of the civil service," as the agency claims. We reject this contention as absurd on its face. Moreover, the Office of Personnel Management (OPM), not the agency, oversees the administration of the civil service. *E.g.*, 5 U.S.C. §§ 1103(a)(5), 7701(d), 7703(d). The agency has no authority to arrogate to itself the determination of what constitutes impact on the administration of the civil service.

Regarding the agency's unelucidated claim of potential impact on matters of national security, as explained in the May 20, 2024 Order, the Board does not interfere in security clearance determinations. But this is not a security clearance determination. This is a determination that the agency improperly failed to pay appropriate back pay and restore the appellant to duty during periods when— according to the Board's *factual* determinations based on the administrative record—the appellant possessed a valid clearance. May 20, 2024 Order at 15, 17. The agency already submitted these arguments in its petition for review in the underlying petition for enforcement matter, and we already rejected them on both factual and legal grounds. May 20, 2024 Order at 11-17. The agency has not

even attempted to explain why we should entertain these arguments again, and we decline to do so.

The agency asserted that, in lieu of complying with the May 20, 2024 Order, it is "exploring an avenue to challenge those findings." CRF, Tab 14 at 4. The agency provided no legal authority for its claim that it can challenge the Board's Order, and we are aware of none. The Board's statutory authority under 5 U.S.C. § 1204(a)(2) to enforce its orders is well established. Moreover, the U.S. Court of Appeals for the Federal Circuit has long held that agencies have no judicial right to appeal the Board's orders. The sole exception is the unusual circumstance where the Director of OPM, having already participated in the case before the Board, petitions the court for review of a decision that the Director believes erred in interpreting a civil service law, rule, or regulation affecting personnel management, and which will have a substantial impact on a civil service law, rule, regulation, or policy directive. 5 U.S.C. § 7703(d); *e.g.*, *Horner v. Schuck*, 843 F.2d 1368, 1373 (Fed. Cir. 1988) (OPM Director "has sole authority to seek judicial review of a board decision that is unfavorable to an agency"); *Department of Health and Human Services v. Bercier*, 261 F. App'x 284, at *1 (Fed. Cir. 2008) (dismissing appeal signed by agency representative because "[o]nly the Office of Personnel Management can petition this court for review of a Board decision on behalf of an agency"). The OPM Director has not participated here. And as explained above, the agency has no authority to assert claims that are reserved to the OPM Director.

Moreover, even if the agency had a judicial right of appeal, it would not attach to the May 20, 2024 decision, which is not final and appealable. *E.g.*, *Weed v. Social Security Administration*, 571 F.3d 1359, 1362 (Fed. Cir. 2009) (Board order forwarding appeal for further adjudication was not final and appealable under section 1295(a)(9)).[2] The agency is well aware of these points,

---

[2] It would also be far too late to attach to the Board's October 10, 2018 decision—which, we remind the agency, followed a partial reversal by the Federal Circuit of the Board's original decision affirming the agency's removal action.

as the Board's Office of General Counsel noted them during the June 17, 2024 conference and in subsequent email correspondence with the agency on June 28, 2024.

If the agency is attempting to pursue some non-judicial avenue to overturn our decision, we likewise are aware of none, and the agency has not enlightened us. Nor has the agency explained why it would purportedly take more than 3 months to explore such options—the judicial appeal deadline, even if it applied to the decision at issue and could be exercised by the agency, is a mere 60 days, 5 U.S.C. § 7703(b)(1)(A)—or why it has no time frame for concluding its explorations. Thus, it is difficult to escape the conclusion that the agency's purported exploration of appeal options is not bona fide, and that in fact it has no intention of ever complying with the Board's orders.

Finally, we reject as well the agency's specious claim that while it mulls over the dubious "avenues" discussed above, it cannot pay the appellant because "he would have to set that money aside until the Government exhausts its appeal rights" and that defying the Board's orders is the "prudent" course to save the appellant from potentially having to repay a debt. CRF, Tab 14 at 4-5. As explained above, the agency has no appeal rights. Even if it did, it has no authority to refuse to comply with the Board's Order pending the outcome of any such appeals. If compliance with the Board's Order resulted in adverse debt or tax consequence to the appellant, that would be unfortunate, but has no bearing on the agency's obligations. Agencies not infrequently issue payments that may alter or increase an appellant's tax burden, or that may later require accounts to be squared and create debts to be repaid. This is a natural product of restoring an appellant to the status quo ante (which may include back pay), especially if significant time elapses between the original adverse action and the Board's reversal of the action. Here, the agency's sudden solicitude for the appellant's financial circumstances notwithstanding, the agency must timely comply with the

Board's Orders. The agency is entitled to *disagree* internally with the Board's determinations, but it is not entitled to *disobey* them.

As noted above, the Board has statutory authority to enforce its orders, 5 U.S.C. § 1204(a)(2). It also has statutory and regulatory authority to impose sanctions against the agency official responsible for noncompliance with a Board order. 5 U.S.C. § 1204(e)(2)(A); 5 C.F.R. § 1201.183(c). Such sanctions may include a ruling adverse to the agency and certification to the Comptroller General of the United States that no payment is to be made to certain agency employees found to be in noncompliance with the Board's order. 5 C.F.R. § 1201.183(e).

As authorized by these provisions, the Board hereby ORDERS as follows:

(a) Within **3 days** of the date of this Order, the agency shall file a submission identifying the current responsible agency official—specifically, that individual's name, title, grade, and address. *See* 5 C.F.R. §§ 1201.183(a)(2), 1201.183(a)(7). If the agency fails to submit this information, the Board will assume that the responsible agency official is Bradley Brooker, General Counsel.[3]

(b) Within **7 days** of the date of this Order, the agency and the responsible agency official are DIRECTED TO SHOW CAUSE why sanctions should not be imposed for the agency's failure to comply in full with the Board's May 20, 2024 Order. Both the agency's and the responsible agency official's responses shall address the specific actions the agency will take to come into compliance with the May 20, 2024 Order, and by what date. Such date shall be no later than **14 days** from the date of this Order. Additionally, the responsible agency official's response shall include a sworn declaration that the agency representatives in this case have fully apprised him or her of the

---

[3] The agency originally informed the Board that this official was Dana Boente, General Counsel, but Mr. Boente appears to have left the agency in approximately 2020.

issues, the agency's obligations, the Board's orders and the agency's failure to comply with them, and the Board's sanction authority.

(c)     Within **7 days** of the date of this Order, the agency representatives, Ms. Deja Nave and Mr. Drew Ambrose, are both ORDERED to submit separate sworn declarations attesting that they each informed the responsible agency official of the above information and provided him or her a copy of this Order.   Ms. Nave and Mr. Ambrose must also attest that they each provided their immediate supervisors a copy of this Order.   Finally, if the responsible agency official is an individual other than Mr. Brooker, Ms. Nave and Mr. Ambrose must attest that they each provided Mr. Brooker a copy of this Order as well.

If complete, substantive responses and declarations are not received within the time frames specified above, the Board will issue an order requiring the agency and the responsible agency official to appear in person for a show cause hearing before the Board at the Headquarters of the Merit Systems Protection Board in Washington, D.C.  *See* 5 C.F.R. § 1201.183(c).  The Board reminds the agency that the Board has statutory and regulatory authority to compel attendance, including by subpoena.  5 U.S.C. § 1204(b)-(d); 5 C.F.R. §§ 5.4, 1201.81-.85, 1201.183(c)(1).

The appellant may file a response to the forthcoming agency submissions, if he desires, within **7 days** of the date of those submissions.

FOR THE BOARD:

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.